# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**CHARLES WESLEY O'BERRY,**

    **Plaintiff,**

vs.                                                                      Case Number 4:05cv229-WS/WCS

**MONICA DAVID,**
**FREDERIC B. DUNPHY,**[1]
**and JENNIFER PATE,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se,* brought a civil rights action under 42 U.S.C. § 1983 against members of the Florida Parole Commission challenging their decision to suspend Plaintiff's presumptive parole release date and the setting of the next parole interview.  Doc. 14 (second amended complaint).  Defendants filed a summary judgment motion on May 30, 2006.  Doc. 28.  Plaintiff filed a response, doc. 32, and then a second response, doc. 34, which supersedes the first response.[2]

---

[1] The last name of this Defendant is corrected in the style.  The Clerk should note the change on the docket

[2] Plaintiff's first response was filed prior to the usual order being entered advising Plaintiff of his obligation under Rule 56 to respond to the summary judgment motion.  An order was entered on July 12, 2006, giving that notice to Plaintiff and giving him additional time to file a response.  Doc. 33.  The order also advised Plaintiff that he

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

---

could "choose to stand upon the materials recently filed, doc. 32" but he should file a response clarifying what he intended to do. His second response, doc. 34, is accordingly, deemed to replace the prior response.

Case Number 4:05cv229-WS/WCS

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Claims of the Second Amended Complaint, doc. 14**

Plaintiff alleged that he was bringing the case "under the analysis of the" opinion from the United States Supreme Court in Wilkinson v. Dotson, 544 U.S. 74, 125 S.Ct. 1242, 1248, 161 L.Ed.2d 253 (2005) (concluding that a § 1983 case may be brought challenging state parole procedures).[3] Plaintiff claims that his presumptive parole release date was suspended by the Defendants in 2003 and his next parole hearing set for five years in the future. Plaintiff claims those actions violate the Ex Post Facto and Due Process Clauses of the United States Constitution. Plaintiff seeks future injunctive relief, declaratory relief, and monetary damages. Doc. 14.

**The Relevant Rule 56(e) Evidence**

Defendants David, Dunphy, and Pate are Commissioners for the Florida Parole Commission (hereinafter the "Commission"). Doc. 28. Plaintiff is an inmate incarcerated within the Florida Department of Corrections and was sentenced on December 15, 1969, to fifty years on one count of Rape and a consecutive one hundred

---

[3] The case held that if release from prison is not sought, and the relief sought would not demonstrate the invalidity of confinement or its duration, the claim is cognizable under § 1983. Wilkinson, 544 U.S. at 82, 125 S.Ct. at 1248.

years on a second count of Rape.  Doc. 28, p. 2; Defendants' ex. A; doc. 32, Plaintiff's ex. CC and DD.  A presumptive parole release date of December, 1985, was established for Plaintiff in February of 1979.  Doc. 28, p. 3; Defendants' ex. B.  In 1985, that date was extended sixty months to December 9, 1990, based on the Commission's conclusion that Plaintiff's "parole prognosis" was poor.  Doc. 28, p. 3; Defendants' ex. C; Plaintiff's ex. DD.

In December of 1990, Plaintiff's presumptive parole release date was extended again to 1993.  Doc. 28, p. 3; Defendants' ex. D.  The basis for that extension was a disciplinary report Plaintiff received for disobeying a verbal order two months prior to the parole hearing.  Doc. 28, p. 3; Defendants' ex. D.  Plaintiff had a biennial parole review in 1991 and the presumptive parole release date was reduced six months.  Doc. 28, p. 4; Defendants' ex. E.

The Commission suspended Plaintiff's (June 9, 1993) presumptive parole release date at its meeting in 1993.  Doc. 28, p. 4; Defendants' ex. G; Plaintiff's ex. DD.  The evidence reveals that in 1993, at Plaintiff's effective parole release date consideration hearing, *see* doc. Defendants' ex. G, the Commission failed "to make a positive finding as required by 947.18, F.S."  Doc. 28, p. 4; Defendants' ex. G; *see also* Plaintiff's ex. DD.  Plaintiff's case was set for further consideration.  The Commission Action form, which was provided to Plaintiff on or about June 1, 1993, relates Plaintiff's criminal history, and the "particularly serious" nature of the rape offenses.  Doc. 28, p. 4; Defendants' ex. F.  Further, the Commission was concerned with Plaintiff's behavior that

caused the 1990 disciplinary report[4] and resulted in Plaintiff's being transferred "to another institution." Defendants' ex. F. Additionally, the Commission was troubled by Plaintiff's denial of "this sexual offense and this denial, expressed in various fashions, prevents his eligibility or treatment in a program for mentally disordered sex offenders." *Id.* The notice of Commission action concludes with the following statement:

> Based on the nature of the offense, the prior crimes involving violence, institutional misbehavior and the need for sex offender therapy, the Commission finds that a reasonable doubt exists with regard to O'Berry's ability to remain free of criminal behavior should parole be granted. The Commission, therefore, suspends O'Berry's presumptive parole release date of 6/9/93 until such time that he is found to be eligible for parole release.

Doc. 28, p. 4; Defendants' ex. F. Thus, as of 1993, Plaintiff's presumptive parole release date was suspended by the Commission and Plaintiff was aware of that fact. Plaintiff's presumptive parole release date remained suspended during his subsequent parole reviews in 1995, 1996, 1998, 1999, and 2001. Doc. 28, p. 4; Defendants' exhibits I, J, K, O, P, Q, and R.

---

[4] Plaintiff has provided a copy of the disciplinary report. Doc. 32, ex. Q. The report alleged that Plaintiff made inappropriate comments to a staff member, saying that she looked "very beautiful," and the like. Plaintiff was advised that their relationship was professional and to keep his personal comments to himself. When Plaintiff saw this staff member again several days later, he approached her and said, "I have my attraction for you under control." *Id.* Plaintiff was told the "conversation was over" and after a supervisor was notified, Plaintiff was issued a disciplinary report. *Id.* The disciplinary hearing worksheet indicates Plaintiff admitted making the final statement, but said "he intended it in a different context." *Id.* Plaintiff denied telling the staff member she was beautiful and denied having been counseled previously about making personal comments. *Id.* Plaintiff was found guilty, placed in disciplinary confinement for 30 days, and lost 60 days of gain time. *Id.*

Case Number 4:05cv229-WS/WCS

Following Plaintiff's parole interview in August of 2001, the Examiner recommended "that an Effective Parole Release Date be re-established . . . ."  Plaintiff's ex. DD; Doc. 28, Defendants' ex. Q.  However, when the Commission considered Plaintiff for parole at his extraordinary review, they left the presumptive parole release date (June 9, 1993) suspended.  Doc. 28, Defendants' ex. R.  Plaintiff's case was set for another extraordinary review in 2003.  *Id.*; *see also* Defendants' ex. S.

At the Commission meeting in September of 2003, Plaintiff's presumptive parole release date was again left suspended.  Doc. 28, p. 4; Defendants' ex. T.  The Commission found nothing in the record that warranted lifting the suspension and found Plaintiff's parole release plan unsatisfactory because there was no employment plan.  *Id.*  At that meeting, the Commission also set Plaintiff's next parole interview for five years in the future, (April, 2008), "because it was not reasonable to expect parole would be granted in the intervening years" because of concerns for the public's safety if Plaintiff was released, there was trauma to Plaintiff's prior rape victim, and a firearm had been used in the offense.  Doc. 28, pp. 4-5; Defendants' ex. T.

**Analysis**

Plaintiff's claim concerning the suspension of his presumptive parole release date is barred by the statute of limitations.  Plaintiff's release date was suspended in 1993 at the Commission meeting.  Doc. 28, p. 4; Defendants' ex. G; Plaintiff's ex. DD.  Plaintiff was aware at that time that the date was suspended.

A federal § 1983 claim is governed by the forum state's residual personal injury statute of limitations.  Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir.

1999), *citing* Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).  In Florida, "a plaintiff must commence a § 1983 claim . . . within four years of the allegedly unconstitutional or otherwise illegal act."  Burton, 178 F.3d at 1188, *citing* Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1483 (11th Cir.1988).

Although the limitations period is determined by state law, when a § 1983 action accrues is a question of federal law.  Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (and cases cited).  The statute of limitations begins to run when the facts supporting the cause of action are apparent or would be apparent to a reasonable person, and when the plaintiff knows or has reason to know of his injury.  *Id.*  Plaintiff knew in 1993 that his presumptive parole release date was suspended.

In Lovett v. Ray, 327 F.3d 1181 (11th Cir. 2003), a state prisoner brought suit pursuant to 42 U.S.C. § 1983 asserting that the retroactive application of a new Georgia parole policy violated the Ex Post Facto Clause.  The period of limitations was two years under Georgia law.  The prisoner had been notified by defendants in September, 1998, that he would not be considered for parole until 2006.  The court held:  "As of that time [1998] he knew, or should have known, all of the facts necessary to pursue a cause of action . . . ."  327 F.3d at 1183.  The claim, which was filed more than two years later, was held to be untimely.  *Id.*  The court further held that the claim was not a continuing violation:  "Here, the defendants' act (deciding not to consider Lovett for parole again until 2006) was a one time act with continued consequences, and the limitations period was not extended."  *Id.*  In a subsequent case, the court also held that:  "Each time [the

prisoner's] parole reconsideration hearing is set, it does not amount to a distinct and separate injury." Brown v. Georgia Board of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003). That is so because it is the initial decision applying the policy, not the continued application of the policy, which triggers the running of the statute of limitations. *Id.* "The successive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations." *Id.* at 1262.

Consequently, the four year statute of limitations should bar Plaintiff's claims concerning the suspension of his presumptive parole release date. Since Plaintiff was aware in 1993 when the presumptive parole release date was first suspended, this claim had to have been brought prior to 1997. The claim is not revived each time the parole commission considers Plaintiff for parole. Defendants did not, however, raise this affirmative defense and, thus, the merits of the claim will be considered.

It is well settled that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 2369, 129 L. Ed. 2d 383 (1994), *citing* Preiser v. Rodriguez, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995) (recognizing that claims which seek release from prison are "not cognizable under § 1983."). Thus, Plaintiff may not use a § 1983 action to establish a parole release date.

With respect to parole procedures, Plaintiff has failed to state a claim upon which relief may be granted.  Florida's parole system leaves the decision of whether or not to grant parole "to the discretion of the [Parole] Commission . . . ."  Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), *cert. denied*, 479 U.S. 830 (1986), *citing* Moore v. Florida Parole & Probation Comm'n, 289 So. 2d 719 (Fla. 1974).  "There is no constitutional right to parole in Florida."  Jonas, 779 F.2d at 1577, *citing* Hunter v. Florida Parole & Probation Comm'n, 674 So. 2d 847, 848 (11th Cir. 1982).[5]  In Hunter v. Florida Parole & Probation Commission, the Court rejected a claim that the Commission improperly calculated a presumptive parole release date and, thus, violated due process, holding that because there was no liberty interested in parole, there was no due process violation.  Hunter, 674 F.2d at 848.  Plaintiff's due process claim concerning the suspended presumptive parole release date must be dismissed.

Challenges to the Commission's discretion have also been raised as ex post facto claims.  In Paschal v. Wainwright, 738 F.2d 1173 (11th Cir. 1984), the court ex post facto challenge to the 1978 Parole Act which changed the manner in which the Commission exercised its discretion.  The court held that both before and after the 1978 Act,[6] the decision about whether or not to grant parole was within the ultimate discretion of the Parole Commission.  Paschal, 738 F.2d at 1179-80.  Paschal has been

---

[5] "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right."  FLA. STAT. § 947.002(5).

[6] Before the change, decisions were made on an "ad hoc basis," and afterwards, "objective guidelines" were utilized.  Paschal, 738 F.2d at 1178.

consistently followed and challenges to how the Commission exercises its discretion are not viable ex post facto claims.  See Damiano v. Florida Parole and Probation Commission, 785 F.2d 929, 933 (11th Cir.1986); Johnson v. Wainwright, 772 F.2d 826, 827 (11th Cir. 1985); Jones v. Georgia State Bd. of Pardons and Paroles, 59 F.3d 1145, 1150 (11th Cir. 1995).  Johnson discussed the holding in Paschal as follows:

> The guidelines have clarified the commission's exercise of its discretion.  The commission has created a system by which it attempts to use its discretion in a more uniform manner than previously.  The substantive power of the commission remains unchanged; only the manner in which it exercises this power has been altered.

Johnson, 772 F.2d at 827, citing Paschal, at 1179.  Accordingly, because Paschal held that "the decision about whether or not to grant parole was" a discretionary decision of the Parole Commission which fails under the Ex Post Facto Clause, then a decision which denies parole by suspending a release date must necessarily fail as well.

Dismissal of those claims leaves only Plaintiff's claim concerning the setting of his next parole consideration hearing in 5 years pursuant to FLA. STAT. § 947.174(1)(b) (1997).  To violate the Ex Post Facto Clause, a new statute must inflict "a greater punishment, than the law annexed to the crime, when committed." Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997), quoting, Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798).  An ex post facto law must (1) "apply to events occurring before its enactment" and (2) "disadvantage the offender affected by it" by "altering the definition of criminal conduct or increasing the punishment for the crime." Id., 519 U.S. at 441, 117 S. Ct. at 896, quoting Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990).  The issue is "whether [the new law]

produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603, 131 L. Ed. 2d 588 (1995). Plaintiff's crime was committed well before the Florida law was enacted, § 947.174(1)(b), that permits the Parole Commission to set a parole hearing five years in the future.

The statute was amended in 1997 and has been retrospectively applied to Plaintiff at his extraordinary review in 2003, as Plaintiff's original crimes were committed in 1969.[7] The issue here is whether the 1997 law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." As recast by Morales, "[i]f a delay in parole hearings raises ex post facto concerns, it is because that delay

---

[7] In 1978, the statute was amended to delete the requirement of annual parole interviews and to permit biennial reviews. Ch. 78-417, § 11, at 1380, Laws of Fla.; FLA. STAT. § 947.174 (1979). In 1997, the legislature amended the statute again to allow a delay of parole hearings for up to five years:

> For any inmate convicted of murder, attempted murder, sexual battery, attempted sexual battery, or who has been sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date. Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing. For any inmate who is within 7 years of his or her tentative release date, the commission may establish an interview date prior to the 5-year schedule.

FLA. STAT. § 947.174(1)(b) (1997). The statute still allows the Commission to request a subsequent hearing at any time. FLA. STAT. § 947.174(4) (1997).

Case Number 4:05cv229-WS/WCS

*effectively increases* a prisoner's term of confinement . . . ."  Morales, 514 U.S. at 509, n. 4, 115 S. Ct. at 1603, n. 4 (emphasis added).

The California parole regulations considered in Morales, which existed when the petitioner committed his offense, made prisoners eligible for annual parole reconsideration.  514 U.S. at 503, 115 S. Ct. 1597.  The statute was amended to "defer subsequent suitability hearings for up to three years if the prisoner has been convicted of 'more than one offense which involves the taking of a life' and if the Board 'finds that it is not reasonable to expect that parole would be granted at a hearing during the following [two] years and states the bases for the findings.' "  514 U.S. at 503, 115 S. Ct. at 1600.  The Supreme Court found it significant that the new statute applied "only to a class of prisoners for whom the likelihood of release on parole [was] quite remote."  514 U.S. at 510, 115 S. Ct. at 1603.  It also found that the law was "carefully tailored" because (1) it had no effect on the date of a prisoner's initial parole suitability hearing, affecting only the timing of subsequent hearings; (2) inmates were given a full hearing as to whether it was "not reasonable to expect that parole would be granted at a hearing during the following years;" (3) the parole board had to state its findings on that question in writing; and (4) the board still had discretion to alter the frequency of parole hearings.  514 U.S. at 511-512, 115 S. Ct. at 1604.  From this the Court concluded:

> In light of the particularized findings required under the amendment and the broad discretion given to the Board, the narrow class of prisoners covered by the amendment cannot reasonably expect that their prospects for early release on parole would be enhanced by the opportunity of annual hearings.

514 U.S. at 512, 115 S. Ct. at 1604.  The Court determined that the new law "create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," 514 U.S. at 514, 115 S. Ct. at 1605, and, thus, did not violate the Ex Post Facto Clause.

In Jones, the Eleventh Circuit examined a Georgia parole regulation which altered the time between parole consideration from every three years to once every eight years for prisoners serving life sentences.  Garner v. Jones, 164 F.3d 589 (11th Cir. 1999), *reversed* 529 U.S. 244, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). The Eleventh Circuit found an ex post facto violation, noting that the Georgia regulation applied to a much broader range of inmates than was the case in Morales.  164 F.3d at 593-594.  The court also was "unable to conclude" that the Georgia regulation would apply only to a limited class of prisoners as did Morales, and was further bothered by a lack of safeguards[8] showing the regulation was tailored to those inmates who would not be paroled in the interim.  *Id.* at 594.

In reversing Jones, however, the Supreme Court noted that Morales demands a "more rigorous analysis of the level of risk created by the change in law."  Garner v. Jones, 120 S. Ct. at 1370.  It held that the Court of Appeals had "little information bearing on the level of risk" and that absent such knowledge, the claim was speculative. *Id.,* at 1371-72.

---

[8] The Georgia regulation did not require any sort of hearing as to whether it was reasonable to expect that parole would be granted during the intervening eight years, and required no findings on this question.  *Id.*, at 594-595.

Additional precedent is Tuff v. State, 732 So. 2d 461 (Fla. 3d DCA 1999), which concerned the same 1997 statute and the same claim.  In concluding that the statute did not violate the Ex Post Facto Clause, the court pointed out that the Florida statute "affords the procedural safeguards mentioned in *Morales*." Tuff, 732 So. 2d at 463. Tuff is a thorough, well-reasoned decision, and its holding that a five year delay in parole hearings does not violate the Constitution should guide this court in considering the same statute and challenge.

Finally, in Penoyer v. Briggs, No. 06-10777, 2006 WL 3392755 (11th Cir., Nov. 24, 2006) (unpublished), the Eleventh Circuit there affirmed this court's finding that FLA. STAT. § 947.174(1)(b) does not violate the Ex Post Facto Clause.  *Id.*, at *5.  This decision is persuasive authority to guide this court.[9]  A copy of this decision is attached to this report and recommendation.

While the 1997 statute appears to apply to a broader category of inmates than was the case in Morales, there is no inherent risk by the number of inmates included in the statute's reach that a particular inmate's incarceration will be extended.  *See* Garner, 120 S. Ct. at 1368.  In setting a subsequent parole hearing five years in the future, the Commission considers the inmate's criminal history, institutional adjustment, and psychological reports, and makes a determination that the inmate is not suitable for release within that period of time.  FLA. STAT. § 947.174(3).  The basis for the finding is set forth in the record and made known to the inmate.  Additionally, an inmate is

---

[9] Unpublished opinions of the Eleventh Circuit are not binding precedent but may be cited as persuasive authority.  ELEVENTH CIR. R. 36-2.

afforded a hearing and is given a chance to demonstrate his suitability for parole.  In making this discretionary decision (as to whether or not to release an inmate), the Commission will simultaneously consider whether it is reasonable or not to expect that parole would be granted sooner than five years.  The Commission states the basis for these findings in writing and an inmate is given procedural safeguards.  FLA. STAT. § 947.174(1)(b).

Plaintiff has come forward with no evidence specific to his case to demonstrate that the application of the 1997 statute to his case has increased the risk that he will be required to serve a longer sentence without parole.  Florida's 1997 parole statute, FLA. STAT. § 947.174(1)(b) (1997), as applied to Petitioner, does not violate the Ex Post Facto Clause.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 28, be **GRANTED**, and judgment entered in Defendants favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 23, 2007.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case Number 4:05cv229-WS/WCS